*1166 OPINION.
Trammell :
In its original petition the corporation claims that the respondent erred by refusing to allow as part of its invested capital $78,400 representing a patent paid in for stock and $65,580 representing unpaid subscriptions for capital stock. In an amended petition filed at the hearing the petitioner claims that the respondent erred by not including in invested capital (1) all the actual cash paid in by stockholders, (2) that portion of stock subscriptions made by stockholders prior to January 1, 1920, which had not been collected by petitioner but which had been accrued as accounts receivable due from subscribers, and (3) $40,000 representing the actual cash value of patents bona fide paid in for stock of. the corporation having a par value of $75,000. In the amended petition it is also claimed that the respondent erred by failing to allow a reasonable allowance or one-seventeenth of the patent’s actual cash value for exhaustion, and that the respondent further erred by failing to determine that the petitioner had no net income for the calendar year 1920 due to erroneous credits to profit and loss representing excessive overhead charges as cost of manufacture of tools and other shop equipment.
The respondent denies that error was committed by him in the determination of the petitioner’s tax liability.
We have found that prior to January 1,1920, the petitioner, besides having received $9,900 as payment in full for preferred stock subscribed, had also collected $33,470 on unpaid subscriptions to preferred stock. In addition to the $33,470 collected during 1919, the petitioner collected $132,625 during 1920, which, when prorated for the portion of the year in which the respective collections were paid, gives an average amount of $52,228.08 to be included in invested capital. We have heretofore held that payments on stock subscriptions may be included in invested capital from the time paid in. Central Consumers Wine & Liquor Co., 1 B. T. A. 1190; Barker-Jennings Hardware Corporation, 4 B. T. A. 20; Meadows & Co., 5 B. T. A. 241. There should therefore be included in petitioner’s invested capital, on account of collections for stock, $95,598.08, composed of the amounts of $9,900, $33,470, and $52,228.08.
With respect to petitioner’s contention that there should be included in invested capital amounts of subscriptions made prior to January 1, 1920, for stock not issued and which had not been collected by petitioner, we are of the opinion that such amounts can not be included in invested capital until paid. Central Consumers Wine & Liquor Co., supra; Forge Coal Mining Co., 2 B. T. A. 975; Barker-Jennings Hardware Corporation, supra; Meadows & Co., supra. The decisions in those cases are applicable and controlling here.
*1167 We have also found that on August 27, 1920, preferred stock to the amount of $5,000 was issued to Mossberg in consideration for his paying a note for $4,000 owing by the company and the partial payment by him of invoices of goods received by it and that common stock amounting to $2,500 was issued to him as a bonus with the preferred. Inasmuch as the payment of the note extinguished a liability of the company amounting to $4,000, that amount should be included in the petitioner’s invested capital. Since the evidence does not show the amount of that portion of the invoices paid by Moss-berg, we have no basis for determining the amount to be included in the petitioner’s invested capital as a result of this transaction.
Relative to the patent assigned by Mossberg to the petitioner on September 24, 1919, we have found that with the exception of one carrier the carrier produced under the Mossberg patent was in several respects superior to the old style carriers then being manufactured. While no carriers had been manufactured under the patent there was at the time the petitioner acquired it an established market for braider carriers. There were at least five million then in use and a portion of them had to be replaced either with the old style carrier or with the Mossberg carrier, which was a superior article. A witness for the petitioner, who is an employee of the New England Butt Co. and who was familiar with the various types of carriers manufactured and sold in 1919, expressed his opinion as to an actual cash value of $40,000 on September 24, 1919, of the patent. Mossberg, who had had long experience in obtaining and disposing of patents, testified as to a value of $50,000. In view of all the evidence in the case we are of the opinion that the patent had an actual cash value of at least $40,000 at the time it was assigned to the corporation.
Of this value, the petitioner is entitled to a deduction against income of one-seventeenth of the amount or $2,352.94, representing a reasonable allowance for exhaustion of the patent.
We have found the value of the patent for the purpose of an exhaustion allowance to be $40,000. The respondent contends, however, that section 331 of the Revenue Act of 1918 will prevent the patent being included in petitioner’s invested capital at a greater amount than its cost to Mossberg.
This contention is correct if Mossberg acquired an interest or control of 50 per cent or more of the petitioner corporation.
The petitioner began business with an authorized capital stock of $325,000 divided into $200,000 common stock and $125,000 preferred stock. Each share of both classes of stock had a par value of $100 and the right to one vote. Mossberg assigned to the petitioner for $200,000 par value of its common stock the patent here under consideration, together with such others as he might obtain while “ in the employment ” of the petitioner. Of the $200,000 of common *1168 stock the evidence shows that $75,000 was issued to Mossberg for the patent. The evidence does not show that the $125,000 of the common stock was actually issued to him. While in the instrument executed September 29, 1919, he acknowledges having received the stock, he testified that he had no recollection of this portion of the stock actually being issued to him nor did he remember ever voting it, but that this portion of the stock was placed in the treasury of the corporation and later was issued from time to time as a bonus. The books were introduced in evidence and they do not show that the $125,000 par value of the common stock was issued to Mossberg.
Whether the $125,000 par value of stock was actually issued to Mossberg or was held in the treasury of the company or remained as unissued stock the effect insofar as the question in controversy is concerned, is the same. If it was actually issued to him he held it as a trustee for the corporation. It was the corporation’s stock. In effect it was treasury stock, or unissued stock, and should not be considered in determining the amount of outstanding stock. The $75,000 par value of stock held by Mossberg in his own right was immediately after the transfer of the patent to the corporation more than 50 per cent of the outstanding stock. On the other hand, even if it be held that the $125,000 par value of stock was actually issued to Mossberg and it be held to be effective outstanding stock, it was controlled by Mossberg, as trustee, who owned in his own right the balance of the common stock. In any event, the situation is one coming within the scope of section 331 of the Revenue Act of 1918, and the petitioner is not entitled to include in invested capital the patent at a value in excess of the cost to Mossberg. Since the evidence does not show the cost to Mossberg, the action of the respondent with respect to the patent is affirmed.
The petitioner’s last contention is that the respondent erred by failing to determine that the corporation had no net income for 1920 due to erroneous credits to profit and loss representing excessive overhead charges in cost of manufacture of tools, and other shop equipment. In regard to this issue, the petitioner contends that instead of $38,858.92, which represented the amount of overhead expenses originally estimated as being applicable to the manufacture of tools and other shop equipment, being eliminated from its total expenses and capitalized, only $12,146.88 should have been so eliminated from its total expenses and capitalized. In support of this the petitioner offered no legal or admissible evidence. On the basis of the evidence before us, we are unable to hold that this contention of the petitioner is correct.
Reviewed by the Board.
Judgment will he entered on 10 days’ notice, under Rule 50.